UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>RUSSELL DEAN CRONCE,<br><br>        Defendants. | **3:06-CR-00027-RRB-JDR**<br><br>**RECOMMENDATION ON<br>DEFENDANT'S MOTION TO<br>SUPPRESS EVIDENCE**<br><br>(Docket Entries 42 & 53) |

Defendant Russel Dean Cronce moves to suppress all evidence seized as a result of a police stop and search of an automobile in which he was a passenger on November 6, 2005. Docket entry 42. The government opposes the motion. Docket entry 45. Cronce filed a supplemental memorandum. Docket entry 53. An evidentiary hearing was conducted on May 26, 2006. Upon due consideration of the evidence adduced and arguments of the parties, the magistrate

judge recommends that findings of fact and conclusions of law be adopted as set forth below and that the defendant's motion to suppress be denied.

## Findings of Fact

About 8:00 a.m. November 6, 2005, the Kenai Police Department received what started out to be an anonymous phone call from a person later identified as Kelly Strauch. Mr. Strauch stated that he had a line on some guns that were stolen, likely from a gun store. About a week earlier, there had been a burglary at a local gun shop resulting in a number of guns being taken. He described two of the guns as being a .45 caliber ACP and a Steyer 9mm and said there were three other guns. He also stated that he believed a boyfriend of his daughter was involved in the burglary or at least had the guns in his possession.[1] The caller stated that the boyfriend was approximately nineteen or twenty years old and that he was unsure whether the boyfriend had actually stolen the guns, but he knew that they were in the boyfriend's possession, and he planned to sell them. The caller expressed concern about getting the boyfriend in trouble and appeared to just want to assist the police in returning the stolen property. During the phone call, Mr. Strauch provided his name.

About 20 to 30 minutes later, Mr. Strauch made a second telephone call to Kenai police officer Turnage. Kenai police officer Benjamin Langham was present

---

[1] The "daughter" is actually a step-daughter.

during that phone call and was able to listen to the conversation on a speaker phone. In this call, Mr. Strauch indicated he had spoken with his wife, Pamela, who informed him that the boyfriend said he did not have the guns at his house, and he would take her to the guns. Mr. Strauch suggested that when his wife got off work, they drive by the house and visit the boyfriend and upon viewing the guns obtain a better description, after which he would then call the police with that information. Mr. Strauch reluctantly agreed that the officers could use his name in the report, but he did not want his wife's name appearing in a police report. During this telephone call, officer Turnage informed Mr. Strauch that he was about to go off shift and provided the name of officer Langham as a point of contact.

About 12:30 p.m. that same day, a third call was made from Mr. Strauch, this time to officer Langham. Mr. Strauch said that he knew where the guns were, and that his wife had just driven the boyfriend, as well as one of his friends, to a residence in Nikiski. Mr. Strauch provided officer Langham with directions to that residence. During the third call, Pamela Strauch stated over the telephone that she had been asked by the boyfriend to give him a ride back into Kenai. She identified the boyfriend as Russell Cronce and identified his friend as "Sebastian." Pamela Strauch stated that she would be driving a brown Jeep Grand Cherokee which would be transporting Cronce and his friend, as well as the guns. Along with the car description, the Strauches provided the license plate number of the Jeep,

EBV 904. During the third telephone call, Mr. Strauch agreed that his name could be used.

The Kenai police officers decided there was not enough time to obtain a search warrant while the guns were still at the residence, so they contacted the Alaska State Troopers and requested assistance for a traffic stop of the Jeep while it was en route back to Kenai.

Officer Johnson stationed himself near the Kenai city limits, while officer Langham and trooper Blizzard positioned their vehicle about a mile closer to town. As the Jeep came into Kenai, officer Johnson advised that the vehicle was passing his location. As soon as they could, trooper Blizzard and officer Langham pulled out while officer Johnson initiated a traffic stop. Officer Johnson approached the Jeep with his weapon drawn, and officer Langham approached the other side of the vehicle with his weapon drawn. Officer Langham recognized Cronce from a previous contact. Cronce and Gardner were eventually handcuffed and placed in police custody.

The telephone calls to the Kenai police station were recorded automatically through an administrative line. Prior to the vehicle stop, the police officers determined through ASPIN that the Jeep described by the Strauches was, in fact, registered to them.

Officer Turnage wrote a report in which he stated that the caller (Kelly Strauch) was anonymous. In his initial report, officer Langham also referred to the call as an anonymous tip. At the evidentiary hearing, officer Langham explained that he intentionally kept out Mr. Strauch's name from the report to protect the identity of Mr. Strauch.

Although the officers obtained a general address where the guns might be located, there was not enough time to obtain a search warrant. The Strauches indicated that the boyfriend and his associate would be leaving the residence in about fifteen minutes.

Officer Langham had prior contact with Cronce and Gardner as witnesses in an unrelated case. Thus, he was able to recognize Mr. Cronce by sight.

In his suppression motion, Cronce argues that the officers did not conduct a sufficient investigation to determine if the person calling was actually Kelly Strauch, as the caller represented over the telephone. Cronce further argues that Mr. Strauch was sufficiently involved with the matter under investigation to compromise his independence, neutrality and reason for providing the tip to the police. Cronce argues that because the boyfriend of Mr. Strauch's step-daughter was implicated in the tip provided by Mr. Strauch, a standard higher than reasonable suspicion should be required to justify the traffic stop.

## Discussion

Law enforcement officer must have at least a reasonable suspicion of criminal activity before stopping a vehicle. Delaware v. Pronce, 440 U.S. 648, 653 (1979). If the initial stop of the Strauch vehicle violated the Fourth Amendment, then all evidence seized as a result of the stop must be suppressed under the fruit-of-the-poisonous-tree doctrine. Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). Reasonable suspicion requires a particularized and objective basis for suspecting the particular vehicle stopped is involved in criminal activity. United States v. Thomas, 211 F.3d 1186, 1189 (9th Cir. 2000). The Supreme Court adopted a "totality of the circumstances" approach to determine whether an anonymous tip satisfies probable cause. Illinois v. Gates, 496 U.S. 325 (1990). The Gates analysis applies to determine reasonable suspicion. Alabama v. White, 496 U.S. 325, 329 (1990).

Defendant Cronce argues that the vehicle stop occurred in violation of the Fourth Amendment of the Constitution. He argues that Kelly Strauch, the initial tipster, should not be treated as a citizen informant and that the information he provided to the police was insufficient to justify their stopping of the Strauch vehicle being driven by Mrs. Strauch on November 6, 2005. Cronce argues that the tip provided by Kelly Strauch was insufficiently corroborated to justify a warrantless stop of the vehicle and its search. He argues that the information available to the Kenai

police at the time of the stop and search did not meet the minimal "reasonable suspicion" standard of proof, *citing*, Florida v. J.L., 529 U.S. 266 (2000).

   Before the police effected a traffic stop of the Strauch vehicle they acted on more than the initial telephone call placed by Kelly Strauch concerning the burglary of a gun store and the possible location of the stolen guns. Kelly Strauch contacted the police on three separate occasions. On one of those occasions, Mrs. Strauch spoke with the officers. Prior to the traffic stop, the officers had received three telephone calls from Kelly Strauch. Initially Mr. Strauch desired to remain anonymous and assist the police in obtaining the stolen guns without getting anyone in trouble with the law. Kelly's call was generated by a desire to report information relating to the burglary. During the second telephone call, Mr. Strauch agreed that the police could use his name in a report, but he asked that his wife's name not be used. Mr. Strauch expressed a desire to visit his step-daughter's boyfriend and upon viewing the guns himself, to call the police and tell them where the guns were located. During a third telephone call, Mrs. Strauch related that she would be driving Cronce and Sebastian Gardner (the co-defendant) from Nikiski to Kenai, Alaska, and described the vehicle she would be driving as a brown Grand Cherokee Jeep, license EVB 904.

   In the instant case, the totality of the circumstances justified the traffic stop of the Jeep. The officers verified through APSIN that the Jeep Cherokee was

3-06-cr-00027-RRB-JDR CRONCE @42, 53 RR Mtn to Suppress.wpd    7

RR @42 & 53 Motion to Suppress Evidence
3-06-cr-00027-RRB-JDR   Signed by Judge John D. Roberts   06/06/2006; Page 7 of 13

registered to the Strauches. Based on the information obtained from Kelly Strauch and the three telephone calls, the police did not have to treat his calls as coming from an anonymous tipster for purposes of determining whether the tip provided a reasonable suspicion required by the Fourth Amendment for an investigative stop.

In <u>Florida v. J.L.</u>, the U.S. Supreme Court held that police corroboration of the instant details in an anonymous report about a man with a concealed gun did not provide reasonable suspicion. An anonymous informant reported that a youth of a certain description standing on a particular corner was carrying a concealed firearm. The Supreme Court decided that "[a]n accurate description of a subject's readily observable location and appearance . . . does not show that the tipster has knowledge of concealed criminal activity." *Id.* at 272.

In the instant case, the call to the police was not truly "anonymous." The police reasonably relied on the caller as a known source, notwithstanding the police report of officer Langham referring to "anonymous tip" received by the Kenai police department. The police had a license plate number for the target vehicle and thus access to the identity of the registered owners of the vehicle. The police reasonably relied on the caller as a known source, and were not required to confirm information the tipster provided; for example, that Kelly Strauch had a step-daughter whose boyfriend was Russell Cronce, who had been implicated by Kelly Strauch in the receipt of the stolen guns. It was objectively reasonable for the officer to believe

that the vehicle reported to be en route to Kenai would, in fact, be transporting the two individuals reported by Kelly Strauch to have possession of the stolen firearms.

Here, the tip was reliable in its assertion of illegality beyond the question of identifying the criminal violator(s). The tip predicted future action that was subsequently corroborated. The evidence indicates that Kelly was seeking immediate police assistance, at least as to the return of the firearms, and Kelly explained how he knew that the boyfriend had possession of the firearms. The description of the Jeep, its location and destination were precise. It would be unreasonable to require that the caller, here a person whose step-daughter was associating with the alleged violator, to predict future actions of Cronce and Gardner, beyond informing the police when and where they would be traveling in the informant's vehicle. The police had the license number of the vehicle, where the vehicle would be traveling and the approximate time of the trip. Mr. Strauch had given the police adequate description of the weapons stolen.

In J.L. the Supreme Court assessed the reliability of an anonymous tip that a black male minor, standing at a bus stop and wearing a plaid shirt, possessed a firearm in violation of Florida law. *See, id.* at 271. There was no audible recording of the tip or other documentation of the call in the record. Nothing was known about the anonymous informant, and the tipster apparently did not place an emergency call to 911, but called the police department. The Supreme Court held that such an

anonymous tip identifying an individual as carrying a gun, without more, did not provide reasonable suspicion justifying a Terry stop and frisk. In J.L. the tip amounted to no more than "a bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271.

In United States v. Terry-Crespo, 356 F.3d 1170 (9th Cir. 2004), the court held that where the police rely only on a 911 call to support an investigatory stop, the 911 caller must provide the police with reasonable articulable suspicion justifying the Terry stop. Such a tip must carry sufficient indicia of reliability. *Id.* at 1174. The court stated that where the call is not anonymous, it is entitled to greater reliability. *Id.* The Ninth Circuit explained what it meant by anonymity for purposes of its holding. Even though a tip may be anonymous in some sense, it may have "certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action." 356 F.3d at 1174, *citing*, Justice Kennedy's concurring opinion in Florida v. J.L. at 275.

In the instant case the tip should be deemed as coming from a known source. *Cf.*, United States v. Fernandez-Castillo, 324 F.3d 1114, 1118 (9th Cir.), *cert. denied*, 540 U.S. 959 (2003) (tip from Montana Department of Transportation informing the State highway patrol narrowed the likely class of informants to Montana Department of Transportation employees). In the instant case the officers

had the license plate number of the vehicle as well as the name of the tipster before undertaking the traffic stop. Officer Langham sufficiently explained the reason why the tipster in the instant case was referred to as "anonymous" in his November 6, 2005 report as an effort to preclude public disclosure at that point of the tipster's identity.

It stands to reason that any given caller reporting a law violator could provide a false name. The Ninth Circuit has declined to impose a duty on the police to confirm the identity of every 911 caller who provides his or her name. 356 F.3d at 1175. Unlike J.L., there is not a complete absence of any evidence of the call. Indeed, here, one or more calls was recorded by the police. This is significant because it limits the ability of the police to fabricate an "anonymous informant" for purposes of Fourth Amendment analysis. The Fourth Amendment requires any search to be "reasonable" and such a determination is made by considering any competing interest of individual security and privacy with the need to promote legitimate governmental interest. See, United States v. Knights, 534 U.S. 112, 118-19 (2001).

That Kelly Strauch decided to call the police several times and expose himself to legal sanction further supports the tip's reliability. J.L., 529 U.S. at 276. As the court in Terry-Crespo reasoned, calling the police and having a recorded telephone conversation risks the possibility that the police could trace the call or later

identify the caller by his voice. 356 F.3d at 1176. Also, Mr. Strauch's call evidenced inside information, and information from his wife evidenced first-hand information about the crime being reported (possession of stolen property). The tips provided by Kelly Strauch were corroborated and exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. Alabama v. White, 496 U.S. at 327. The motion to suppress lacks merit and should therefore be denied. IT IS SO RECOMMENDED.

DATED this 6th day of June, 2006, at Anchorage, Alaska.

   /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Friday, June 16, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s)

to the objections shall be filed on or before **NOON, Wednesday, June 21, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).